1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

11   ARTHUR L. SMITH, JR.,

12               Petitioner,

13        v.

14   DR. HENRY RICHARDS,

15               Respondent.

16

Case No. C07-5039 RBL/KLS

REPORT AND
RECOMMENDATION

**NOTED FOR:**
**September 14, 2007**

17        This 28 U.S.C. § 2254 petition for habeas corpus relief has been referred to Magistrate

18   Judge Karen L. Strombom pursuant to 28 U.S.C. § 636 (b) and Local MJR 3 and 4.  Petitioner seeks

19   federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  (Dkt. # 14).   Respondent has answered

20   (Dkt. # 17) and Petitioner has replied (Dkt. # 18).  This matter is now ripe for review.   After careful

21   review, the undersigned recommends that the petition be denied with prejudice.

22

23                              **I.  BASIS FOR CUSTODY**

24        Petitioner is in the custody of the Washington Department of Social and Health Services,

25   pursuant to a finding by a superior court jury that Petitioner is a sexually violent predator under

26   RCW 71.09.  Petitioner was previously in the custody of the Washington Department of Corrections

27

28   REPORT AND RECOMMENDATION- 1

pursuant to the lawful judgment and sentence of the King County Superior Court. Petitioner was convicted by jury verdict on June 18, 1993, of one count of rape in the second degree.  (Dkt. 11, Exh. 1).

## II.  STATEMENT OF THE CASE

The facts pertinent to the issues presented for this habeas petition were summarized by the Washington State Court of Appeals as follows:

> Arthur Smith, Jr. was convicted in Alaska of two counts of rape and one count of escape in the second degree.  He was released on discretionary parole in 1991.  He reported as directed for five months, but failed to return after an unauthorized absence.  Alaskan authorities had no idea of his whereabouts until he was arrested in Washington in 1992 for rape.

> In 1993, Smith was convicted in a King County court of rape in the second degree.  He was given an exceptional sentence of 144 months.  The state of Alaska filed a detainer and parole warrant in 2002 with the Washington Department of Corrections.  Shortly before the end of his sentence of confinement, the State petitioned to commit Smith as a sexually violent predator.  Smith moved to dismiss the petition, but the motion was denied.

> A jury trial took place in January 2004 to determine whether Smith was a sexually violent predator.  Smith moved a second time to dismiss, and again the motion was denied.  During opening statements, the deputy prosecutor was describing Smith's criminal history when she asked for "a moment."  The transcript reads as follows:

> [MS. MURRAY:] His next rape occurred on April 19, 1992.  Less than a year after he absconded.  This was the rape of ____ _____.  It was an Easter Sunday, April 19th that year.  ____ _____ had taken a walk that day.

> May I have a moment, your honor?

> THE COURT: I beg your pardon?

> MS. MURRAY: May I have a moment?

> THE COURT: You want a break?

> MS. MURRAY: Just a second.

REPORT AND RECOMMENDATION- 2

THE COURT: I'm going to excuse the jury for a minute.  Please, go back to the jury room.  (The jury leaves the courtroom).

MS. MURRAY: I'm okay, your honor.

Reporter's Partial Transcript of Proceedings (RPTP) (January 16, 2004), at 8-9.

Smith's attorney moved for a mistrial.  The court stated it was "not prepared to grant a mistrial at this point."  RPTP (January 16, 2004), at 10.  When the jury was called back, the judge told the prosecutor, "Ms. Murray, you may continue."  RPTP (January 16, 2004), at 13.  The prosecutor said, "I apologize," and continued her description of Smith's criminal history.  RPTP (January 16, 2004), at 13.

After closing statements, the court additionally remarked that Smith's criminal history was not being tried and that any emotional display during the discussion of the rapes committed by Smith "doesn't go to the impartiality of this jury."  Report's transcript of Proceeding (RTP) (January 29, 2004), at 1045.

MS. MURRAY: Your honor, at some point in time – and I know that the court regarding my opening statement was going to make additional findings on the record.  When should we do that?

THE COURT: It was more of an observation that the issues of the rapes themselves is not being tried to this jury.  And so any emotional response to the rapes themselves, in my opinion, doesn't go to the impartiality of this jury.  If the issue of the rapes had been in question, whether they occurred or not, I think there might be a different answer.

MS. MURRAY: Okay.

THE COURT: But because the issue is not that, the issue is whether Mr. Smith is a sexually violent predator, while it's an unfortunate incident, it's certainty [sic] not one, in my view, that rises to the level of requiring a mistrial.  So . . .

MS. MURRAY: And just for the record, it wasn't – for the record, it wasn't like I was bent over crying, in tears or anything like that.  My eyes welled up, and I tried my hardest not to look at the jury and turn away.

And I think the court had probably the best opportunity to look, see my reaction when I looked at your honor as well.

THE COURT: Yeah.  I have no idea what the jury saw or perceived.

MS. BURBANK [sic]: I really tried hard not to put my head down.  So just for the record, I wasn't bent over crying, sobbing.

REPORT AND RECOMMENDATION- 3

1

2

MR. CARNEY: While that is true, the respondent's position is that it was quite clear that Ms. Murray was overcome with emotion.

3

4

5

THE COURT: I think there was – it was obvious to me, looking from this perspective, that there was an emotional response.  And what the jurors saw or perceived is certainly not known to me.  I don't think, under these facts, it rises to the level of a mistrial.  So . . .

6

MS. MURRAY: Thank you, your honor.

7

RPT (January 29, 2004), at 1044-45.

8

(Dkt. # 11, Exh. 8 at 2-4).

9

10

At the time Petitioner's attorney moved for mistrial, a portion of the record not excerpted by the Court of Appeals, the following discussion was had between the trial court and counsel:

11

12

13

MR. CARNEY: Actually, before you bring them back - -

THE COURT: Actually, I can't see you. I'm sort of looking through this teepee.

14

15

MR. CARNEY: I'll move, then. I completely understand that emotions happen to everyone and they're not always controllable. And I think you did the right thing to ask for time. But I'm really concerned about what happened.

16

17

This is already an emotionally charged case. And to have one of the attorneys for the State so clearly so emotionally, I am really concerned about the prejudicial effect that that's going to have on this jury. And I think we have to ask for a mistrial.

18

19

20

MS. BURBANK: Your honor, from the audience perspective, it appeared that Ms. Murray lost her place, and was stumbling and was embarrassed about that. Perhaps we can present it to the jury. She can offer an apology on that grounds.

21

I don't think it was evident to the jury that it was an emotional upset. I do believe she was able to control herself until they left the room.

22

23

24

MR. CARNEY: For what it's worth, I was also watching. And it did not appear to me at all, and I was confident - - in my view, she wasn't weeping, but she was emotional. And I'm confident from the jury's faces that they say that she was emotional.

25

26

THE COURT: I'm not sure if that's the basis, actually, for a mistrial in an opening statement.

27

MS. MURRAY: I can get it together.

28

REPORT AND RECOMMENDATION- 4

THE COURT: I'm thinking through some of the alternatives where prosecutorial misconduct, and accusations and things in closing argument - - I'm certainly not prepared to grant a mistrial at this point. I want to continue on through the day. You've made your motion. And I don't know if this is a basis for it or not. And we now have 4 days. And you may need to brief the issue. I suspect not. But obviously your record is preserved. It's clear if you're appealing to a jury's emotion in reaching a verdict, that is, at some level – or pretty low level - - inappropriate. But I don't know if this qualifies as an appeal.

I would suggest, at this point, that the only comment be an apology for the delay, and let's move on. I think the more attention that's put on it, the worse it is.

(Dkt. # 11, Exh. 14, Volume II, January 15, 2004, at 85-86).

### III. STATEMENT OF STATE COURT PROCEDURAL HISTORY

On October 1, 1993, the trial court imposed an exceptional sentence of 144 months confinement. (Dkt. # 11, Exh. 1 at 3).  On January 30, 2004, an Order of Commitment was entered by the King County Superior Court, based upon the jury verdict finding Petitioner is a sexually violent predator under RCW 71.09. (*Id*., Exh. 2).

On February 23, 2004, Petitioner appealed the Order of Commitment. (*Id*., Exh. 4).  On January 20, 2005, Petitioner filed a brief of appellant in the Washington Court of Appeals, raising the following issues for review:

1)   Where Smith was not about to be released from total confinement into the community, a statutory prerequisite for SVP proceedings, did the trial court err in denying the motion to dismiss the SVP petition? Should this Court reverse and dismiss the order of commitment?

2)   Where the prosecuting attorney became emotional and started crying during opening statement, did the trial court err in denying the motion for mistrial? Should this Court reverse and remand for a new commitment trial?

(*Id*., Exh. 5 at 1).

On April 13, 2005, the State of Washington filed its response brief.  (*Id*., Exh. 6).  On May 23, 2005, Petitioner filed a reply brief.  (*Id*., Exh. 7).  On September 19, 2005, the Washington

REPORT AND RECOMMENDATION- 5

Court of Appeals issued a published opinion, affirming the decision of the King County Superior Court.  (*Id.*, Exh. 8).

On November 7, 2005, Petitioner filed a petition for review in the Washington Supreme Court, raising the following issues for review:

> 1)   Where Smith was not about to be released from total confinement into the community, a statutory prerequisite for SVP proceedings, did the trial court err in denying the motion to dismiss the SVP petition? If so, should this Court reverse and dismiss the order of commitment?
>
> 2)   Whether the court erred in denying the motion for a mistrial after one of the prosecuting attorneys became emotional and started crying in opening argument? If so, should this Court reverse and remand for a new commitment trial?

(*Id.*, Exh. 9 at 1).

On September 7, 2006, the Chief Justice for the Washington Supreme Court entered an order denying the petition for review. (*Id.*, Exh. 10).  On October 6, 2006, the Washington Court of Appeals entered its mandate.  (*Id.*, Exh. 11).

## IV. ISSUES

Petitioner presents the following grounds for review in this habeas petition:

**Issue 1:**  Where Petitioner Smith was not about to be released from total confinement in the community, a statutory prerequisite for RCW 71.09 et seq. S.V.P. proceedings, did the trial court commit error in denying the motion to dismiss the S.V.P. petition? If so, should this Court reverse and dismiss the order of commitment?

**Issue 2:**  Whether the Court erred in denying a motion for a mistrial after one of the prosecuting attorneys became emotional and started crying in opening argument? If so, should this Court reverse and remand for the new commitment trial?

(Dkt. # 14 at 2).

## V.  EXHAUSTION

REPORT AND RECOMMENDATION- 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Petitioner properly exhausted both of the habeas claims presented in his amended habeas petition, because he fully and fairly presented those claims as federal constitutional violations to the Washington Supreme Court in his petition for review to that Court. (*See* Dkt. # 11, Exh. 9 at 7, 10-11 and 14).

## VI.  EVIDENTIARY HEARING

In a proceeding instituted by the filing of a federal *habeas corpus* petition by a person in custody pursuant to a judgment of a state court, the "determination of a factual issue" made by that court "shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

Where a Petitioner "has diligently sought to develop the factual basis of a claim for habeas relief, but has been denied the opportunity to do so by the state court," an evidentiary hearing in federal court will not be precluded.  *Baja v. Ducharme,* 187 F.3d 1075, 1078-79 (9th Cir. 1999), *cert. denied*, 120 S.Ct. 798 (2000) (quoting *Cardwell v. Greene*, 152 F.3d 331, 337 (4th Cir. 1998)). If the Petitioner fails to develop "the factual basis of a claim" in the state court proceedings, an evidentiary hearing on that claim shall not be held, unless the petitioner shows: (A) the claim relies on (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.  28 U.S.C. § 2254(e)(2).

An evidentiary hearing is not required on issues that can be resolved by reference to the

REPORT AND RECOMMENDATION- 7

state court record." *Id.* (emphasis in original). "It is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise." *Id.; United States v. Birtle*, 792 F.2d 846, 849 (9th Cir. 1986) (quoting 28 U.S.C. § 2255). Petitioner is not entitled to an evidentiary hearing in this Court because, as is discussed below, there is no indication "that an evidentiary hearing would in any way shed new light" on the grounds for federal *habeas corpus* relief raised in the petition and the issues raised by Petitioner may be resolved based solely on the state court record.

## VII. STANDARD OF REVIEW

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. *Engle v. Isaac,* 456 U.S. 107 (1983). 28 U.S.C. § 2254 is explicit in that a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States." 28 U.S.C. § 2254(a)(1995). The Supreme Court has stated many times that federal habeas corpus relief does not lie for errors of state law. *Lewis v. Jeffers*, 497 U.S. 764 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Estelle v. McGuire,* 502 U.S. 62 (1991).

Further, a habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d). A determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C.

REPORT AND RECOMMENDATION- 8

1    §2254(e)(1).

2

3

4
                          **VIII.  DISCUSSION**

5    **A.    Petitioner's First Claim for Relief - Release From Total Confinement; Washington's
            Sexually Violent Predator Statute**

6
            Petitioner claims that the trial court erred when it denied his motion to dismiss his sexually
7
     violent predator petition. Specifically, Petitioner argues that he was "not about to about to be
8
     released from total confinement into the community," which is a statutory prerequisite for RCW
9
     71.09 *et seq.* sexually violent predator proceedings.  (Dkt. # 14).
10
            The Washington Court of Appeals reviewed and rejected Petitioner's argument that he was
11
12   not "about to be released from total confinement" in the context of RCW 71.09.030(1), because the
13   state of Alaska had a detainer and parole warrant:
14
                   We begin by analyzing Smith's claim that a person is not "about to be
15         released from total confinement" in the context of RCW 71.09.030(1)[1] when his
           sentence of confinement in a Washington state institution is about to end but another
16         state has filed a detainer and parole warrant. Smith argues that the Legislature
           intended "about to be released from total confinement" to mean that an offender is
17         about to be released from confinement into society. The State argues that Smith's
           interpretation of RCW 71.09.030 would create a conflict with RCW 71.09025(1)(a)
18         and that Smith misreads the statute's legislative history. We agree with the State.
19         RCW 71.09.025(1)(a) provides that when a person convicted of a sexually violent
           crime may meet the criteria of a sexually violent predator, the "agency with the
20         jurisdiction" must refer the person to the appropriate prosecuting attorney "three
           months prior to the anticipated release from total confinement" of the person. RCW
21         71.09.025(1)(a)(i). The "agency with jurisdiction" is "the agency with the authority
           to direct the release of a person serving a sentence or term of confinement and
22         includes the department of corrections, the indeterminate sentence review board, and
           the department of social and health services." RCW 71.09.025(4). But under Smith's
23         argument that "total confinement" includes subsequent confinement in another state,
24         no Washington agency would have the authority to direct the release of a person.
           Under these circumstances, there would be no agency with jurisdiction to refer an
25         offender under RCW 71.09.025(1)(a)(i) for SVP proceedings. This would undermine
26         the operation of RCW 71.09.025(1)(a)(i) and frustrate the commitment process
           envisioned by RCW 71.09.030(1).
27

28   REPORT AND RECOMMENDATION- 9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

We also note that the Washington Supreme Court incorporated the definition of "total confinement" in former RCW9.94A.030(35) into chapter 71.09 RCW in In re Albrecht, 147 Wn.2d 1,9-10,51 P.3d 73 (2002). This former statute defines "total confinement" as "confinement inside the physical boundaries of a facility or institution operated or utilized under contract by the state or any other unit of government for twenty-four hours a day, or pursuant to RCW 72.64.050 and 72.64.060." Former RCW 9.94A.030(35) (1996). This definition supports the State's argument that a person is "about to be released from total confinement" when the person is about to finish a sentence of confinement in Washington institutions, regardless of another state's detainer.

Smith argues that the Legislature intended "about to be released from total confinement" to mean that the offender was about to re-enter the community and that amendments to the statute reflect this intent. As originally enacted, RCW 71.09.030(1) provided in part: "When it appears that: (1) The sentence of a person who has been convicted of a sexually violent offense is about to expire, or has expired on, before, or after July 1, 1990 ... ; "Laws of 1990, 1 st Ex. Sess., ch. 12, § 3; Laws of 1990, ch. 3, §1003 (emphasis added). In 1992, the Legislature changed the statute to read: "When it appears that: (1) The term of total confinement of a person who has been convicted of a sexually violent offense is about to expire, or has expired on, before; or after July 1, 1990 . . ." Laws of 1992, ch. 45, §4 (emphasis added). The Legislature amended the statute in 1995, to its present version: "When it appears that (1) A person .. is about to be released from total confinement . ." Laws of 1995, ch. 216, § 3. The 1995 Final Legislative Report notes that under the 1998 session law, "the operation of the statute is clarified." 1995 Final Legislative Report, 54th Wash. Leg., at 176.[2]

Smith argues that the change in language from "the sentence" to "total confinement" indicates the Legislature"s intent that the statute apply only when an offender was about to leave confinement and enter the community, not merely when an offender was about to complete a sentence of confinement in Washington state institutions. We disagree.

The 1995 Final Legislative Report indicates that the Legislature clarified aspects of the Community Protection Act in response to the Washington Supreme Court's decision in In re Young, 122 Wn.2d 1, 857 P.2d 989 (1993), superseded by statute as stated in In re Detention of Thorell, 149 Wn.2d 724, 746, 72 P.3d 708 (2003). In Young, the court held that due process required evidence of a recent overt act for the SVP commitment of a person not currently incarcerated. Young, 122 Wn.2d at 39-42. The Report provides that the Legislature amended the Community Protection Act so that "[i]f the person is not totally confined at the time the petition is filed, the state must show a recent overt act." 1995 FINAL LEGISLATIVE REPORT, 54TH WASH.LEG., at 176 (emphasis added).

The Legislature clearly intended to make the date of a person's release the focus of the statute. The legislation as a whole makes clear that the legislative focus

REPORT AND RECOMMENDATION- 10

is the release of a person from a Washington state institution. We do not find persuasive Smith's argument that the Legislature changed the language of RCW 71.09.0309(1) with the intent ascribed to it by Smith.

Smith also contends that the Task Force on Community Protection, the entity that drafted the legislation that was enacted as the Community Protection Act of 1990, intended an offender's impending release into society as the trigger for SVP proceedings. The Task Force intended the legislation to close gaps that allowed dangerous sexual offenders to re-enter society and commit additional crimes. Young, 122 Wn.2d at 10-11, 34; Norm Maleng, The Community Protection Act and the Sexually Violent Predators Statute, 15 U.Puget Sound L.Rev. 821, 823 (1992); David Boerner, Confronting Violence: In the Act and in the World, 15 U. Puget Sound L. Rev. 525, 542-46 (1992). If another state files a detainer for the offender, Smith argues, the Washington community does not face the danger of his release into society. We disagree with this argument as well. If Washington foregoes SVP proceedings and allows the transfer of Smith and other offenders out of state, it will lose its jurisdiction over them and its ability to civilly commit them. A person might serve his sentence in the other state without intervening treatment, return to Washington, and commit additional crimes. The Legislature sought to foreclose this possibility with the Community Protection Act.

Smith further contends that "about to be released from total confinement" must be construed as about to be released into the Washington community so that the statute does not infringe the liberty interests of offenders. A person may not be deprived of life, liberty, or property without due process of law. U.S. Const., amends. 5, 14, WASH.CONST. art. 1, §3. "A state can limit even fundamental liberty interests by regulations (1) justified by a compelling state interest, and (2) narrowly drawn." In re Schuoler, 106 Wn.2d 500, 508, 723 P.2d 1103 (1986). The State has a compelling interest in treating sex predators and protecting society from their actions. Young, 122 Wn.2d at 26-27. While due process concerns require courts to construe laws limiting liberty interests to render them constitutional, they do not require this court to adopt the construction advocated by Smith. If the State does not initiate civil commitment proceedings against sexually violent predators such as Smith, it creates the serious risk that such predators will not receive necessary treatment and will return to Washington and commit further crimes against Washington residents. The requirement of narrow tailoring does not compel this court to accept Smith's interpretation of "about to be released from total confinement."

[1]When a person convicted of a sexually violent offense "is about to be released from total confinement," the appropriate prosecuting attorney may file a petition "alleging that the person is a 'sexually violent predator' and stating sufficient facts to support such allegation." RCW 71.09.090(1), (5). "The construction of a statue is a question of law which is reviewed de novo." State v. Ammons, 136 Wn.2d 453, 456, 963 P.2d 812 (1998). [Footnote by the court.]

[2]The Senate Bill Report, in a summary of a House amendment to the bill, states that "[c]larification is added concerning the court's jurisdiction over a sexually violent predator." [Footnote by the court.]

(Dkt. # 11, Exh. 8 at 4-9).

REPORT AND RECOMMENDATION- 11

This Court is bound by the Washington Court of Appeal's interpretation of RCW 71.09.030(1). A state court has the last word on the interpretation of state law. *McSherry v. Block*, 880 F.2d 1049, 1052 (9th Cir. 1989). The issue remaining here is whether the due process aspect of the Washington Court of Appeal's decision was objectively unreasonable. Due process requires that a criminal statute "give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. *Bouie v. City of Columbia*, 379 U.S 347, 351 (1964). Thus, a court's unforeseeable and retroactive judicial expansion of a criminal statute without prior notice violates due process. *Rogers v. Tennessee*, 532 U.S. 451, 457 (2001); *Mendez v. Small*, 298 F.3d 1154, 1158 (2002).

The Washington Court of Appeal's interpretation of RCW 71.09.030(1) did not make previously lawful conduct illegal or result in "an unforeseeable and retroactive judicial expansion of narrow and precise statutory language." *Bouie*, 378 U.S. at 352. It was not unreasonable for the Washington Court of Appeals to reject Petitioner's argument that the language "about to be released from total confinement" included subsequent confinement in another state, when such an interpretation would be inconsistent with the statutory history and scheme, legislative intent and the commitment process envisioned by the statute.

Petitioner has not demonstrated that the Washington Court of Appeals interpretation of RCW 71.09.030(1) violated his due process rights, nor was it an unreasonable application of clearly established law. Accordingly, the undersigned recommends that Petitioner is not entitled to federal habeas relief on this claim and his petition should be denied.

**B.     Petitioner's Second Claim for Relief - Mistrial; Prosecutorial Conduct During Opening Argument**

REPORT AND RECOMMENDATION- 12

Petitioner next claims that the trial court erred when it denied his motion for mistrial after one of the prosecuting attorneys became emotional and "started crying" in opening argument.  (Dkt. # 14 at 2).   Petitioner argues that deputy prosecutor's actions were intentional in nature  "… by making an emotional appeal to jurors'  passions and prejudice; crying while explaining that Petitioner had absconded from parole, and only six months later, committed the rape against his Washington victim on "Easter Sunday" of all days."  (Dkt. # 14 at 19).

The Washington Court of Appeals reviewed Petitioner's claim that the trial court erred in declining to declare a mistrial and dismissed Petitioner's claim:

> We next analyze Smith's argument that the prosecutor engaged in misconduct necessitating a mistrial when she was briefly overcome with emotion during opening statements. An appellate court reviews a trial court's decision to grant or not to grant a mistrial under an abuse of discretion standard. State v. Escalona, 49 Wn. App. 251, 254-55,742 P.2d 190 (1987). By breaking into tears just after discussing the rape committed by Smith on an Easter Sunday, Smith argues, the prosecutor made a prejudicial appeal to the emotions of the jurors. "In presenting a criminal case to the jury, it is incumbent upon a public prosecutor, as a quasi-judicial officer, to seek a verdict free of prejudice and based upon reason." State v.Charlton, 90Wn.2d 657, 664, 585 P.2d 142 (1978).

> Smith further argues that the Prosecutor's misconduct requires a mistrial. "In general, prosecutorial misconduct requires a new trial when there is a substantial likelihood that the misconduct affected the jury's verdict." State v. Copeland, 130 Wn.2d 244, 284, 922 P .2d 1304 (1996). In determining whether a trial irregularity influenced the jury, a court may look at (1) the seriousness of the irregularity, (2) whether the statement in question was cumulative of other evidence properly admitted, and (3) whether the irregularity could be cured by an instruction to disregard the remark, an instruction which a jury is presumed to follow. Escalona, 49 Wn.App. at 254. He contends that because opening statements set the tone for a trial, the Prosecutor's misconduct was serious. He additionally contends that the court's decision not to use an instruction to disregard left the jury with the uncorrected impression that the prosecutor was herself scared of him. We disagree.

> The incident was not prosecutorial misconduct, as the incident was not intentional and the attorney acted to minimize its impact by hiding her emotion and quickly requesting a break in the proceedings. The incident likely had little or no effect because it occurred early in the proceedings before the presentation of evidence and closing statements and because it occurred during a discussion of facts that were not in dispute. The trial court declined to give an instruction to disregard,

REPORT AND RECOMMENDATION- 13

but the trial court correctly decided that the incident was already trivial in impact and that an instruction would only draw attention to it. The trial court did not abuse its discretion in declining to declare a mistrial.

Exhibit 8 at 9-10 (emphasis added).

Federal habeas corpus claims alleging unfairness in a prosecutor's conduct at trial are reviewed under the narrow standard of due process, not the broad exercise of supervisory power. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974); *Thompson v. Borg*, 74 F.3d 1571, 1577 (9th Cir. 1996); *Hall v. Whitley*, 935 F.2d 164, 165 (9th Cir. 1991). Improper argument is not a per se constitutional violation. *Jeffries v. Blodgett*, 5 F.3d 1180, 1191 (9th Cir. 1993), cert. denied, 114 S. Ct. 1294 (1994). "Prosecutorial conduct that would pass muster on direct review of a federal court conviction a fortiori passes muster on review of a state court conviction in a habeas proceeding." *Duckett v. Godinez*, 67 F.3d 734, 742 (9th Cir. 1995). "[I]t "is not enough that the prosecutor's remarks were undesirable or even universally condemned" . . . The relevant inquiry is whether the prosecutor's comments "so infected the trial with unfairness as to make the resultant conviction a denial of due process." *Darden*, 477 U.S. at 181.  Even overzealous or obnoxious conduct by a prosecutor does not warrant federal habeas relief. *Thomas v. Cardwell*, 626 F.2d 1375, 1387 (9th Cir. 1980), cert. denied, 449 U.S. 1089 (1981).

Here, there is no evidence that Petitioner's trial was so infected with unfairness that he was denied due process.  The incident was isolated, and it occurred at the very earliest stages of the trial before any evidence had been presented.  In addition, as noted by the Washington Court of Appeals, it occurred while the prosecutor was reading facts into evidence that were not in dispute.  The issue before the jury was not whether Petitioner was guilty of the underlying crimes.

Contrary to Petitioner's contention, there is no evidence that the prosecuting attorney was

REPORT AND RECOMMENDATION- 14

crying, although the prosecution and defense counsel agreed that she showed emotion or was

overcome by emotion and required a moment to compose herself.  (Dkt. # 11, Exh. 14, Volume II,

January 15, 2004, at 85-86).  There is also no evidence that the prosecuting attorney's conduct was

intentional.  The Washington Court of Appeals also analyzed the trial court's decision to refrain

from instructing the jury to disregard the prosecutor's conduct on the basis that to do so would only

draw more attention to the conduct.  Like the Court of Appeals, the undersigned agrees that to have

done so, would only have given greater importance to a minor incident of little relevance to the trial

in its early stages.  The relevant inquiry is whether the prosecutor's comments "so infected the trial

with unfairness as to make the resultant conviction a denial of due process."  There is no evidence

in the record to support such a conclusion here.

Because the decision by the Washington Court of Appeals as to Petitioner's second habeas

claim was not contrary to or an unreasonable application of clearly established federal law, as

determined by the U.S. Supreme Court, or an unreasonable determination of the facts as elicited

during the state court proceedings, the undersigned recommends that Petitioner's is not entitled to

relief on his second habeas claim that the trial court erred in not declaring a mistrial.

## VIII.  CONCLUSION

For the foregoing reasons, the undersigned recommends that Petitioner's habeas petition

(Dkt. # 14) be dismissed with prejudice.   A proposed Order accompanies this Report and

Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure,

the parties shall have ten (10) days from service of this Report and Recommendation to file written

1   objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those

2   objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time

3   limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **September**

4   **14, 2007**, as noted in the caption.

5

6

7          DATED this   13th   day of August, 2007.

8

9

10

11                         Karen L. Strombom

12                         United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   REPORT AND RECOMMENDATION- 16